UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALEX WOLINSKI,<br>      Plaintiff<br><br>    v.<br><br>NEWSWEEK DIGITAL, LLC,<br>      Defendant | No. 23 CV 309<br><br>Judge Jeremy C. Daniel |

### ORDER

Defendant Newsweek Digital, LLC's motion to dismiss, R. 19, is denied. Newsweek will have 21 days to answer the complaint. Status hearing set for February 14, 2024.

### STATEMENT

According to the amended complaint, in February 2019, Plaintiff Alex Wolinski, a sergeant in the Chicago Police Department, supervised a tactical team of twelve Chicago Police Department officers in the execution of a search warrant at the home of Ms. Anjanette Young. (R. 10 ("FAC") ¶¶ 14-16.) Upon entering her home, the officers encountered Ms. Young, naked, and handcuffed her. (*Id.* ¶¶ 17, 26.) One of the officers covered Ms. Young's naked body with a large blanket that was located in her home. (*Id.* ¶ 18.) It was ultimately determined that neither Ms. Young nor her residence had any connection to the target of the search warrant. (*Id.* ¶ 19.) The incident, which was captured on video by the officers' body-worn cameras ("BWC"), led to a Civilian Office of Police Accountability ("COPA") investigation and a lawsuit between Ms. Young and the City of Chicago. (*Id.* ¶¶ 20-21, 25.)

In January 2022, Defendant Newsweek Digital, LLC published an article regarding the search and the resulting settlement that Ms. Young received from the City. (*Id.* ¶ 23.) In the article, Newsweek cited COPA's recommendation that Wolinski be suspended for a year with the possibility of "separation from the department." (*Id.* ¶ 25.) The article also purported to describe the BWC footage of the incident, stating:

> Body camera footage from that night shows police breaking down Young's door while she was in the middle of undressing. She is seen handcuffed naked for about 17

> minutes and is heard repeatedly telling officers they were at the wrong address.

(*Id.* ¶ 26.)

Wolinski filed the instant defamation suit against Newsweek for statements made in the above publication. (R. 1.) Wolinski alleges that the statement that Ms. Young was "seen handcuffed naked for about 17 minutes" is a substantial deviation from what is actually portrayed in the officers' BWC footage and gives rise to the inference that he lacked integrity in performing his duties as a police officer and consciously disregarded Ms. Young's dignity. (FAC ¶¶ 27-28, 30-31, 34-35.) Newsweek moves to dismiss Wolinski's first amended complaint under Federal Rule of Civil Procedure 12(b)(6). (R. 19.)

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a motion to dismiss, the Court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences in the plaintiff's favor. *See Berger v. Nat'l Collegiate Athletic Ass'n*, 843 F.3d 285, 290 (7th Cir. 2016). Although the plaintiff need not plead "detailed factual allegations" to survive a motion to dismiss, mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

Under Illinois law, a statement is defamatory if "it tends to harm a person's reputation to the extent that it lowers that person in the eyes of the community or deters others from associating with that person." *Huon v. Denton*, 841 F.3d 733, 738 (7th Cir. 2016) (citing *Tuite v. Corbitt*, 866 N.E.2d 114, 121 (Ill. 2006)). To state a defamation claim, a plaintiff must allege that: (1) the defendant made a false statement about the plaintiff; (2) the defendant made an unprivileged publication of that statement to a third party; and (3) the publication damaged the plaintiff. *Glocoms Grp., Inc. v. Ctr. for Pub. Integrity*, No. 17 C 6854, 2018 WL 2689434, at *4 (N.D. Ill. June 5, 2018) (citing *Green v. Rogers*, 917 N.E.2d 450, 459 (Ill. 2009)). Certain categories of statements qualify as defamatory *per se*, meaning they cause harm so "obvious and apparent" that a plaintiff need not plead damages. *Green*, 917 N.E.2d at 491. Illinois law recognizes five such categories—one being "words that impute a person is unable to perform or lacks integrity in performing his or her employment." *Id.* at 491-92.

Newsweek argues that the first amended complaint must be dismissed because the challenged statement is protected under the fair report privilege or, alternatively, because the challenged statement is substantially true. (R. 20.) The fair report privilege and the substantial truth doctrine are both affirmative defenses to a claim

for defamation. *See Doctor's Data, Inc. v. Barrett*, 170 F. Supp. 3d 1087, 1103-04 (N.D. Ill. 2016.) Because a plaintiff need not anticipate and attempt to plead around affirmative defenses in the complaint, *Chi. Bldg. Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610, 613 (7th Cir. 2014), courts usually refrain from granting Rule 12(b)(6) motions on such bases. *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012). Dismissal is only appropriate when the factual allegations in the complaint unambiguously establish all the elements of the affirmative defense. *Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 939 (7th Cir. 2016); *see also Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 806 (7th Cir. 2020) ("With a narrow and pragmatic exception for a plaintiff who has pleaded herself out of court, the appropriate vehicle for resolving an affirmative defense is a motion for judgment on the pleadings under Rule 12(c), not a Rule 12(b)(6) motion."). With this in mind, the Court now turns to the merits of Newsweek's arguments.

Newsweek first argues that Wolinski's claim is barred under the fair report privilege because the challenged statement fairly summarizes COPA's Summary Report of Investigation ("COPA Report") and the claims made in Ms. Young's civil lawsuit. (R. 20 at 9-10.) The fair report privilege provides that a defamatory statement is not actionable under Illinois law if the statement is a "complete and accurate or fair abridgement of [an] official proceeding." *Huon*, 841 F.3d at 739-40 (7th Cir. 2016) (citing *Solaia Tech., LLC v. Specialty Pub. Co.*, 852 N.E.2d 825, 843-44 (Ill. 2006)). The benchmark of the privilege is "the accuracy of the summary"—not the truth or falsity of the information being summarized—as "the report is the public's window to the proceeding." *Solaia Tech., LLC*, 852 N.E.2d at 845.

The fair report privilege is not unfettered, however. Though the report need not be "accurate in every single detail" for the privilege to apply, "it cannot omit or misplace any information in a way that creates an erroneous impression to the readers, report on events unfairly and inaccurately, or add the comments or insinuations of the reporter." *Butler v. Hogshead-Makar*, No. 21 C 6854, 2023 WL 4663644, at *8 (N.D. Ill. July 20, 2023) (citing *Glorioso v. Sun-Times Media Holdings, LLC*, – N.E.3d –, 2023 IL App (1st) 211526, ¶ 80, *opinion modified on other grounds and superseded on denial of reh'g*, 2023 IL App (1st) 211526); *see also Kurczaba v. Pollock*, 742 N.E.2d 425, 442 (Ill. App. Ct. 2000) (explaining that the fair report privilege can be lost if the report is "discolored or garbled").

Here, the FAC plainly challenges the accuracy of Newsweek's summary of the BWC footage that was reviewed as part of the COPA investigation. (FAC ¶¶ 30-31, 34.) Even assuming the COPA report's summary of the BWC footage constitutes an "official proceeding" for purposes of the fair report privilege, the Court cannot, at this stage, conclude as a matter of law that the fair report privilege applies. *See, e.g., Butler*, 2023 WL 4663644, at *9 (explaining further factual development was necessary before determination could be made as to application of fair privilege defense); *Glorioso*, 2023 IL App (1st) 211526, ¶ 58 (explaining that whether the report

3

could reasonably be read as not fair, accurate, or truthful by creating an erroneous implication as to plaintiff's culpability raised questions of fact). In other words, the FAC does not unambiguously establish that the fair report privilege applies and, thus, Wolinski has not pled himself out of court. *See, e.g., Black v. Wrigley*, No. 17 C 101, 2017 WL 8186996, at *6 (N.D. Ill. Dec. 8, 2017) (denying motion to dismiss based on fair report privilege where plaintiff alleged "the statements falsely represent her actions in the litigation" because the privilege "only covers 'accurate and complete' reports or 'fair abridgement[s].'").

Newsweek also argues that Wolinski's claim should be dismissed because the challenged statement is "substantially true" given the events as they are depicted on the BWC footage. (R. 20 at 9-12.) Under Illinois law, a defamation claim fails if "the statement, although not technically true in every respect, was substantially true." *Glob. Relief Found., Inc. v. New York Times Co.*, 390 F.3d 973, 982 (7th Cir. 2004). To establish substantial truth, a defendant need only show "the truth of the 'gist' or 'sting' of the defamatory material." *Id.* The "gist" or "sting" goes to the "heart of the matter in question," in other words, "the hurtfulness of the utterance." *Vachet v. C. Newspapers, Inc.*, 816 F.2d 313, 316 (7th Cir. 1987). Typically, the determination of substantial truth is a question for the jury; however, "the question is one of law where no reasonable jury could find that substantial truth had not been established." *Levinger v. Morell*, No. 20 C 7292, 2022 WL 4552398, at *3 (N.D. Ill. Sept. 29, 2022) (citing *Moore v. People for the Ethical Treatment of Animals, Inc.*, 932 N.E.2d 448, 457 (Ill. App. Ct. 2010)). "Where the plaintiff's own characterization is not substantially different from the allegedly defamatory language, such language my be deemed substantially true." *Id.* (citing *Harrison v. Chi. Sun-Times, Inc.*, 793 N.E.2d 760, 766 (Ill. App. Ct. 2003)).

Here, the "gist" of Newsweek's statement was that Wolinski disregarded Ms. Young's dignity when he compelled Ms. Young to stand handcuffed and naked during the officers' execution of the search. Wolinski challenges the statement on grounds that Ms. Young was not "seen naked" as the article states; rather, she was provided a blanket to cover herself within seconds of the officers' entry into her home. (FAC ¶¶ 18, 31, 34.) Because it is plausible that a reasonable jury could disagree as to the "sting" of this statement on Wolinski's integrity as a police officer, the Court declines to dismiss the defamation claim on grounds of substantial truth.

Defendant Newsweek's motion to dismiss, R. 19, is therefore denied.

Date: 1/16/2024

                                                JEREMY C. DANIEL
                                                United States District Judge

4