UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ALEX WOLINSKI,
    Plaintiff

v.

NEWSWEEK DIGITAL, LLC,
    Defendant

No. 23 CV 309

Judge Jeremy C. Daniel

## ORDER

The Court grants Newsweek's motion to reconsider [27] and finds that the fair report privilege does not apply to the plaintiff's defamation claim as a matter of law. Newsweek has 21 days to answer the first amended complaint.

## STATEMENT

Plaintiff Alex Wolinski, a sergeant in the Chicago Police Department, initiated this defamation lawsuit against Defendant Newsweek Digital, LLC for a statement made in an article regarding the execution of a search warrant at the home of Anjanette Young. (R. 10.) The article states in relevant part:

> Body camera footage from that night shows police breaking down Young's door while she was in the middle of undressing. She is seen handcuffed naked for about 17 minutes and is heard repeatedly telling officers they were at the wrong address.

(R. 20-3 at 3.) Newsweek moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6), arguing that the fair report privilege and substantial truth doctrine barred Wolinski's defamation claim. (R. 19.) The Court denied Newsweek's motion. (R. 26.) Newsweek now moves the Court to reconsider its ruling on the applicability of the fair report privilege. (R. 27.)

Newsweek's motion for reconsideration is governed by Federal Rule of Civil Procedure 54(b), which "bestow[s] sweeping authority" upon the Court to reconsider interlocutory orders, such as the denial of a motion to dismiss. *Galvan v. Norberg*, 678 F.3d 581, 587 n.3 (7th Cir. 2012); *see also Patterson v. Respondus, Inc.*, No. 20 C 7692, 2022 WL 7100547, at *2 (N.D. Ill. Oct. 11, 2022). Motions for reconsideration, which are generally disfavored, serve the "limited function" of either correcting

manifest errors of law or fact, or presenting newly discovered evidence. *Patterson*, 2022 WL 7100547, at *2 (internal quotation marks and citations omitted); *see also Zurich v. Cap. Mkts. Inc. v. Coglianese,* 383 F. Supp. 2d 1041, 1045 (N.D. Ill. 2005) ("Motions to reconsider are not at the disposal of the parties who want to 'rehash' old arguments.").

A party asserting a manifest error, as Newsweek does here, bears a heavy burden. *See Birdo v. Gomez*, 214 F. Supp. 3d 709, 714 (N.D. Ill. 2016). "A 'manifest error' is not demonstrated by the disappointment of the losing party[;]" rather, it "is the wholesale disregard, misapplication, or failure to recognize controlling precedent." *Oto v. Metro Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (internal quotation marks omitted). Notwithstanding this high standard, "Rule 54(b) preserves the district court's broad, inherent authority to revise its interlocutory orders at any time before it enters final judgment." *Patterson*, 2022 WL 7100547, at *2 (citations omitted). In this case, the Court did not conclusively reject Newsweek's argument in support of the fair report privilege. Instead, it determined that further factual development on the issue was necessary before the Court could conclude as a matter of law that the privilege did not apply. (R. 26.) Having been invited by Newsweek to reconsider that previous determination, the Court finds that the fair report privilege does not apply.

Under Illinois' fair report privilege, a defamatory statement is not actionable if it is a "complete and accurate or a fair abridgement of [an] official proceeding." *Huon v. Denton*, 841 F.3d 733, 739–40 (7th Cir. 2016) (citing *Solaia Tech., LLC v. Specialty Pub. Co.*, 852 N.E.2d 825, 843–44 (Ill. 2006)) (internal quotation marks omitted). The fair report privilege thus has two requirements: "(1) the report must be of an official proceeding; and (2) the report must be complete and accurate or a fair abridgement of the official proceeding." *Solaia Tech.*, 852 N.E.2d at 843. A determination as to the latter requirement is made by "comparing the gist or sting of the alleged defamation in the official report or proceedings with the gist or sting in the news account." *Huon*, 841 F.3d at 740 (citing *Harrison v. Chi. Sun-Times, Inc.*, 793 N.E.2d 760, 773 (Ill. App. Ct. 2003)) (internal quotation marks omitted).

Newsweek's primary argument in support of reconsideration is that because the fair report privilege raises a question of law, the Court should not have accepted Wolinski's allegations regarding the article's inaccuracies as true. (R. 28 at 7.) Instead, Newsweek argues the Court should have compared the gist of the alleged defamation in the news account to the Civilian Office of Police Accountability's Summary Report of Investigation ("COPA Report"). (R. 28 at 7.)

As the Court expressed in its prior ruling, however, whether the COPA Report satisfies the first prong of the fair report privilege is unclear. An "official proceeding" for purposes of the fair report privilege is "a report of an official action or proceeding or of a meeting open to the public that deals with a matter of public concern.'" *Solaia Tech.*, 852 N.E.2d at 842 (citing Restatement (Second) of Torts § 611) (internal

2

quotation marks omitted). Newsweek's motion to dismiss did not provide any authority indicating that the privilege could be applied to COPA investigations. Indeed, many of the cases it cited discussed the privilege only in the context of judicial proceedings. *See, e.g., Huon*, 841 F.3d at 739–41 (judicial proceedings); *Wilkow v. Forbes, Inc.*, No. 99 C 3477, 2000 WL 631344, at *7–12 (N.D. Ill. May 15, 2000) (bankruptcy proceedings); *Solaia Tech.*, 852 N.E.2d at 842–48 (judicial proceedings); *Harrison*, 793 N.E.2d at 773–74 (judicial proceedings).

Nonetheless, even if the COPA Report were an official proceeding, the fair report privilege does not apply here. The Newsweek article makes only two references to the COPA Report, neither of which relate to the statement challenged by Wolinski. The first reference to the COPA Report concerns disciplinary recommendations for Wolinski and the other officers involved in the execution of the search warrant. (R. 20-3 at 2.) The second reference contains a direct quote from a section of the report that is not relevant here. (*Id.* at 3.) Nothing in the article attributes the statement at issue to the COPA Report. Rather, the statement suggests that the author reviewed the body camera footage, which was available to the public at the time of the article, and reported what was shown on the body camera footage. This precludes application of the fair report privilege because the "report" is not about the COPA Report, which is required by the first prong of the fair report privilege.

Even if one were to treat the statement as a report about the COPA Report, the statement must still meet the second prong of the fair report privilege—that is, "the report must be complete and accurate or a fair abridgement of the official proceeding." *Solaia Tech.*, 852 N.E.2d at 843. "A report constitutes a fair abridgement if it conveys 'a substantially correct account' to the readers." *Huon*, 841 F.3d at 740 (quoting *Solaia Tech.*, 852 N.E.2d at 844–45). The statement is not.

As mentioned above, the statement at issue concerns body camera footage from the execution of the search warrant. The COPA Report contains a summary of this footage, which provides that the officers entered Ms. Young's home, found her naked, and handcuffed her. (R. 20-2 at 15.) "Approximately 16 seconds after" she is handcuffed and "31 seconds after entering her residence," officers place a jacket over Ms. Young "in an attempt to cover her naked body." (*Id.*) Thirteen seconds later (and "[a]pproximately 44 seconds after" she is handcuffed), "officers wrap a large blanket around [Ms. Young] in a further attempt to cover her naked body." (*Id.*) Ms. Young is "handcuffed and wrapped in a blanket for approximately 10 minutes before a female officer takes" her to a bedroom and unhandcuffs her so that she could clothe herself. (*Id.*) The COPA Report also contains other references to the body camera footage.

The Newsweek article does not provide this level of detail as it simply states that the body camera footage shows "police breaking down Young's door while she was in the middle of undressing," and that Ms. Young "is seen handcuffed naked for about 17 minutes . . . ." (R. 20-3 at 3). This latter statement, which is the one Wolinski

3

challenges, is not a complete and accurate summary of the COPA Report, as nowhere in the report does it say that Ms. Young was "seen handcuffed naked for about 17 minutes."

It is also not a fair abridgement. For the fair report privilege to apply, "it is necessary that nothing be omitted or misplaced in such a manner as to convey an erroneous impression to those who hear or read it." *Solaia Tech.*, 852 F.3d at 845 (citing Restatement (Second) of Torts § 611, Comment *f*) (internal quotation marks and alterations omitted). Here, the COPA Report states that the officers found Ms. Young naked upon entering her residence and that she was not allowed to clothe herself for approximately ten minutes. That is not seventeen minutes. The COPA Report also indicates that Ms. Young's body was covered (at least partially) with a jacket followed by a large blanket less than a minute after the officers' entry.[1]  Newsweek's omission of the attempts at covering Ms. Young is not inconsequential; it "significantly change[s] the defamation appearing in the [COPA Report]." *Huon*, 841 F.3d at 740. The gist and sting of "seen handcuffed naked for about 17 minutes" is far greater than "received a jacket and blanket within two minutes, and was allowed to dress ten minutes later." The former conveys a callous indifference whereas the latter implicates at least a modicum of decency. Thus, in comparing the news article to the COPA Report, the Court finds that Newsweek's omissions convey an erroneous impression. Accordingly, Newsweek's statement is not protected under the fair report privilege.

Date: 4/10/2024

JEREMY C. DANIEL
United States District Judge

---

[1] The Court maintains that whether Ms. Young remained "naked" after receiving the jacket and then the blanket is a question of fact to be decided by a jury. Such factual implications raised by the statement itself prompted the Court to defer ruling on the fair report privilege until a more fulsome factual record developed. *See Missner v. Clifford*, 914 N.E.2d 540, 551 (Ill. App. Ct. 2009) (indicating that applicability of a privilege is ordinarily a question of law, unless there are genuine issues of material fact); *Solaia Tech., LLC v. Specialty Pub. Co.*, 826 N.E.2d 1208, 1213 (Ill. App. Ct. 2005) ("The question of whether a publication is privileged under the fair report privilege is generally a question of law, particularly where there is no dispute about the content of the document on which the publication is based."), *rev'd in part*, 852 N.E.2d 825 (Ill. 2006); *see also Butler v. Hogshead-Makar*, No. 21 C 6854, 2023 WL 4663644, at *9 (N.D. Ill. July 20, 2023) ("Although Defendants claim they are not asking for a resolution of the factual issues, at this stage, further factual development is necessary before a determination can be made about the applicability of [the fair report privilege]."); *Glorioso v. Sun-Times Media Holdings, LLC*, 220 N.E.3d 402, 414 (Ill. App. Ct. 2023) (affirming denial of motion to dismiss where the combination of omissions and additions "left it a question of fact" whether the articles were privileged as fair reports). Upon review, the fair report privilege does not apply here.